UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLUMBERS LOCAL 98 DEFINED
BENEFIT FUNDS, et al.,                                  No. 03-CV-72888-DT

                  Plaintiffs,                    Hon. Gerald E. Rosen

vs.

CONTROLLED WATER, INC., a
Dissolved Michigan Corporation;
FRANCIS J. HUGHES, individually and
d/b/a CONTROLLED WATER, INC., and
D & M MECHANICAL, INC.,

                  Defendants.
_____/

OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

      At a session of said Court, held in
      the U.S. Courthouse, Detroit, Michigan
      on      September 19, 2006

      PRESENT:  Honorable Gerald E. Rosen
                        United States District Judge

## I. INTRODUCTION

      This ERISA contribution action is presently before the Court on the post-audit Motion for Summary Judgment filed by the Plumbers Local 98 Defined Benefit Funds. Defendants have responded to Plaintiffs' motion and Plaintiffs have replied. Having reviewed and considered the parties' briefs and supporting evidence, and having heard the oral arguments of counsel on September 14, 2006, the Court is now prepared to rule on

1

this matter. This Opinion and Order sets forth the Court's ruling.

## II.  PERTINENT FACTS

Defendant Controlled Water, Inc., is a dissolved Michigan corporation,[1] engaging in commercial and residential plumbing. Prior to the corporation's dissolution, Defendant Francis Hughes was the sole shareholder and sole officer of Controlled Water. Since its corporate dissolution, however, Mr. Hughes has continued to "do business as" Controlled Water.

Defendant D & M Mechanical, Inc., is a shell company formed by Francis Hughes, and has been used by Controlled Water in an attempt to segregate its union employees from its non-union employees for the purpose of fringe benefit contributions. In an earlier Opinion and Order in this case, the Court held that D & M Mechanical is but an alter ego of Defendant Controlled Water and, as such, held that both employers are bound by the Collective Bargaining Agreement entered into between Local 98 and the employers and employer associations whose members employ members of the Union. [*See* October 8, 2004 Opinion and Order Granting Plaintiffs' Motion for Partial Summary Judgment.]

The Court also ruled that pursuant to the CBA, Defendants were required to pay employee fringe benefit contributions to the Plaintiff Funds for each employee who performed work covered by the Agreement and that such covered work includes both

---

[1] The corporation was automatically dissolved in July 2002 for failure to file any annual reports since 1999.

residential and commercial plumbing work. *Id.* Because Defendants admitted that they made fringe benefit contributions to the Funds only on behalf of their union-member/ commercial plumbing employees and not on behalf of employees who performed residential work, and had failed to submit to a complete audit of all of their records, in addition to awarding Plaintiffs a partial summary judgment for the $2,135.36 in unpaid contributions as reported by the auditor in his December 3, 2003 report, the Court further ordered that D & M and Controlled Water submit to a complete audit as to all of their employee and employee contribution records, including the records pertaining to employees performing residential work, for the period September 1999 to the present, and advised that it would entertain a second Motion for Summary Judgment upon completion of the new audit. *Id.*

The full audit on Defendants has now been completed and shows that a total of $177,807.24 is owing to the Plaintiff Funds for the time period of 1999 to the present. [*See* Plaintiffs' Ex. B.] This audit shows for this seven-year period fringe benefit contributions owing for the residential work performed by five Controlled Water/D & M employees ($152,301.24) as well as the amount determined to be owing for commercial work performed by its employees under the December 2003 audit ($25,506.00),[2] for a

---

[2] The December 3, 2003 audit showed that $29,318.24 was owing in unpaid fringe benefit contributions for the time period of October 1999 - September 2002. As indicated above, in their previous Motion for Partial Summary Judgment, Plaintiffs only sought and were granted judgment in the amount of $2,135.36 under the December 2003 audit due to some question of fact raised by Defendants as to the existence of documentation to dispute the other portions of the audit. Defendants subsequently produced evidence of

total amount owing of $177,807.24.

Plaintiffs state that since the completion of this audit, they have repeatedly advised Defendants that if they disputed the audit amount, they needed to provide Plaintiffs with documentation or other evidence demonstrating that the amount owing for the employees included in the audit is incorrect. [*See* Plaintiffs' Ex. C.] Plaintiffs further state that they have conducted two face-to-face meetings with Defendants and their counsel and have engaged in numerous telephone conferences advising Defendants of the necessity of producing the documentation if they dispute the audit. However, Defendants never provided such documentation to Plaintiffs or to the Court.[3] Because Defendants have not

---

payment of $3,812.24 for the week of October 8 - October 12, 2001 which had been included in the audit. This amount, accordingly has been subtracted from the audit amount for which Plaintiffs now seek judgment.

[3] Plaintiffs' counsel states that Defendants' counsel has advised her on several occasions that she had sent her a fax setting forth Defendants' objections to the audit but Plaintiffs' counsel states that she never received such a fax. In any event, Defendants have attached to their Response Brief a copy of the letter that was purportedly faxed to Plaintiffs' counsel. The Court notes that, although the letter states that it is Defendants' position that the maximum amount which could be owing to the Plaintiff Funds is $16,874.26, **no documentation substantiating Defendants' claims has been supplied**. Rather, all that has been submitted is Defendants' counsel's undocumented statement that some of the work performed by the five employees during the relevant time period was not "covered work" under the CBA. It is universally settled that "statements of counsel are not evidence" and do not create issues of fact. *United States v. Fetlow*, 21 F3.d 243, 248 (8th Cir.), *cert. denied*, 513 U.S. 977 (1994). *See also*, *Sorbo v. United Parcel Service*, 432 F.3d 1169, 1175 (10th Cir. 2005) ("[S]tatements of counsel, which are not summary judgment evidence, cannot create an evidentiary dispute." *Id*., citing *Thomas v. Wichita Coca-Cola Bottling Co*., 968 F.2d 1022, 1025 (10th Cir.1992)); *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir.1974) (statements of counsel "are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment"); *Metropolitan Life Ins. Co. v. Biggs*, 68 Fed.Appx. 644, 648 (6th

submitted any documentation to dispute the audit amount, Plaintiffs request entry of summary judgment.[4]

### III.  DISCUSSION

### A.  STANDARDS APPLICABLE TO MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is proper "'if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

Cir. 2003) (counsel's bare statements in plaintiff's response are not sufficient to defeat defendant's motion for summary judgment).

[4] The Court is aware that, after Plaintiffs noted the evidentiary insufficiency of Defendants' Response in their Reply Brief, Defendants tried to file a "supplemental response brief" in an attempt to bolster their position.  However, the Court ordered that supplemental brief stricken for failure to comply with the Local Court Rules and advised Defendants that the supplemental brief would not be considered in deciding Plaintiffs' Motion.  However, even if the Court were to consider the supplemental response, it would not cure Defendants' evidentiary insufficiency.  Defendants appended to the stricken supplemental response an affidavit from Defendant Francis Hughes.  Hughes states in that affidavit that "based upon my personal knowledge," if monies at all are owing for unpaid fringe benefits for the 5 employees named, such amounts total only $16,874.26.  This conclusory statement is not only evidentiarily insufficient to withstand summary judgment, but more importantly, *it contradicts Mr. Hughes previous deposition testimony*.  In his deposition, Mr. Hughes testified that he had no knowledge as to the financial workings of his company payroll or the fringe benefit contributions owing for the individuals included in the audit.  In fact, he testified, "I never see the paychecks [his signature is stamped on the checks], I never see the checks that go to the fringe benefits. . . . I don't even know what my guys make an hour." [Hughes 3/5/04 Dep., p. 6.]  It is well-settled that a party may not create an issue of fact for trial by filing an affidavit, after a motion for summary judgment has been filed, which that contradicts his previous deposition testimony after a motion for summary judgment has been filed.  *See Penny v. United States Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997); *Reid v. Sears, Roebuck & Co.*, 790 F.2d 453, 460 (6th Cir. 1986).)

judgment as a matter of law.'"  Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases -- *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) -- ushered in a "new era" in the standards of review for a summary judgment motion.  These cases, in the aggregate, lowered the movant's burden on a summary judgment motion.[5]  After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment.  They are summarized as follows:

> * The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> * The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> * The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> * The trial court has more discretion than in the "old era" in evaluating the respondent's evidence.  The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted.  The trial court has at least some discretion to determine whether the respondent's claim is plausible.

---

[5]"Taken together the three cases signal to the lower courts that summary judgment can be relied upon more so than in the past to weed out frivolous lawsuits and avoid wasteful trials."  10A C. Wright, A. Miller, M. Kane, Federal Practice & Procedure, § 2727, at 35 (1996 Supp.).

*Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996). *See also, Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply these standards in deciding Plaintiffs' motion for summary judgment in this case.

B.  DEFENDANTS HAVE NOT MET THEIR BURDEN OF ESTABLISHING THAT THEY ARE NOT LIABLE TO THE PLAINTIFF FUNDS FOR THE AUDIT AMOUNT

Under Sixth Circuit precedent, where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for work covered by a collective bargaining agreement, the burden shifts to the employer to produce evidence as to what work is not covered. *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 696-97 (6th Cir. 1994). This "burden-shifting" derives from the employer's duty under 29 U.S.C. § 1059 to maintain records with respect to each of its employees that are sufficient to determine what benefits are owing to them. From this premise, the *Grimaldi* court determined that "[a]n employer cannot escape liability for his failure to pay his employees the wages and fringe benefits due to them under the law by hiding behind his failure to keep records as statutorily required." 30 F.3d at 697 (quoting *Brick Mason Pension Trust Fund v. Industrial Fence and Supply*, 839 F.2d 1333, 1338 ( 9th Cir. 1988).

As set forth above, despite repeated requests, Defendants have failed to produce any documentation to dispute the audit. As noted in footnotes 3 and 4, above, the conclusory statements of Defendant Hughes and Defendants' counsel are patently insufficient to establish an issue of material fact to withstand Plaintiffs' properly

7

supported summary judgment. Therefore, the Court will enter judgment in favor of the Plaintiff Funds and against Defendants for the $177,807.24 in unpaid fringe benefit contributions determined to be owing under the audit.

C.  INDIVIDUAL DEFENDANT FRANCIS HUGHES IS PERSONALLY LIABLE FOR THE UNPAID FUND CONTRIBUTIONS

The Court has previously held that Defendant D & M Mechanical, Inc. is merely an alter ego of Defendant Controlled Water, Inc., and as such, D & M is liable, along with Controlled Water, for the unpaid fringe benefit contributions. The Court now holds that individual Defendant Francis Hughes is also personally liable for the unpaid fringe benefit contributions.

First, by virtue of the fact that his corporation, Controlled Water, Inc., has been dissolved by the State of Michigan, Mr. Hughes' "d/b/a," Controlled Water, is not protected by the corporate shield. Mr. Hughes is now the employer, and as such, is liable for the fringe benefit contributions to the Funds for each employee who performed work covered by the collective bargaining agreement.

Second, separate and apart from his liability as a "d/b/a" employer, Mr. Hughes is personally liable for all fringe benefit contributions owing to the Plaintiff Funds as a result of his breach of his fiduciary duties under ERISA.

29 U.S.C. § 1109(a) imposes personal liability on fiduciaries as follows:

(a)  Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach,

>and to restore to such plan any profits of such fiduciary which have been made through use of the assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate. . . .

A person is a "fiduciary" with respect to a plan:

>**to the extent (i) he** exercises any discretionary authority or discretionary control respecting management of such plan or **exercises any authority or control respecting management or disposition of its assets**. . . .

29 U.S.C. § 1002(21)(A)(emphasis added).

Department of Labor regulations and federal case law provide that fringe benefit contributions constitute plan assets under ERISA on the date that they are due such that an individual may be held personally liable for breach of his fiduciary obligations by not paying these contributions to their intended beneficiaries, i.e., the individual's employees.

29 C.F.R. § 2510.3-102(a) provides:

>**Definition of "plan assets" - participant contributions**. (a) *General rule*. For purposes of [pertinent sections of ERISA], the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contributions to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets.

Consistent with the above regulation, courts have held that when an employer withholds money from an employee's paycheck for deposit into an employee welfare benefit fund, the employer is a fiduciary with respect to this money. *See e.g. United States v. Grizzle*, 933 F.2d 943, 946-48 (11th Cir. 1991), *cert. denied*, 502 U.S. 897 (1991) (money withheld for deposit into vacation fund was a plan asset); *LoPresti v.*

*Terwilliger*, 126 F.3d 34, 39 (2nd Cir. 1997) (money withheld from employees' paychecks for deposit into pension fund was a plan asset).

This rationale has been extended to delinquent contributions to multiemployer plans. For example, in *Galagay v. Gangloff*, 677 F. Supp. 295 (M.D. Pa. 1987), a multiemployer plan brought an action against various enterprises and individuals to collect delinquent contributions. The court held that the multiemployer plan properly stated a cause of action against the enterprises for violation of fiduciary duties under ERISA. The court cited 29 U.S.C. § 1002(21)(A)(i) for the proposition that a person becomes a fiduciary when he "exercises any authority or control respecting management or disposition of its assets." *Id.* at 300. Further the wage agreement which obligated the defendants to make contributions to the funds stated that "[t]itle to all monies paid into and/or due and owing to said fund shall be vested in and remain exclusively in the trustees of the fund." *Id.* at 301. Based upon this contractual language, the court accepted the plan's reasoning that the employer contributions became vested assets of the fund once they became "due and owing," as opposed to when actually paid. *Id.* *See also*, *In re: Consolidated Welfare Fund ERISA Litigation*, 839 F. Supp. 1068, 1073 (S.D.N.Y. 1993) (same); *NYSA-ILA Medical and Clinical Services Fund v. Catucci*, 60 F. Supp. 2d 194, 201 (S.D.N.Y. 1999) ("An agreement that unpaid debts to an ERISA fund become assets means that when a corporation is delinquent in its contributions, the fund has sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets.")

Similarly, in *United States v. Panepinto*, 818 F. Supp. 48 (E.D.N.Y. 1993), the collective bargaining agreement called for employer payments to multiemployer funds. The CBA further provided,

> Neither the Associations as such nor any Employer shall have any legal or equitable right, title or interest in or to any sum paid by or due from the Employer. . . and of said benefit funds.

*Id.* at 52. The court found this language sufficient to make the amounts due "assets" of the funds, explaining, "If the employer has no legal interest in any amounts he received that are 'due to' the funds, then plainly the agreement makes these amounts "assets" of the funds." *Id.*

The court then concluded:

> Once the Defendants knowingly failed to make required contributions to the Funds, they exercised control respecting disposition of the assets of an employer welfare benefit plan. They held those funds as fiduciaries, and under 29 U.S.C. § 1104(a)(1), they were required to discharge their duty "solely in the interest of the participants and beneficiaries of the Funds."

*Id.*

As in the above cases, in this case, Plaintiffs' trust documents, incorporated into the collective bargaining agreement, provide that contributions become vested plan assets when due.

29 U.S.C. § 1104(a)(1)(A) provides, in pertinent part:

> . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and
>
> A.    For the exclusive purpose of:

>   (i)   providing benefits to participants and their beneficiaries, and
>
>   (ii)  defraying reasonable expenses of administering the plan.

When a person breaches that standard of care, he incurs personal liability. 29 U.S.C. § 1109(a).

In *Iron Workers Local No. 25 Pension Fund, et al. v. McGuire Steel Erection, Inc.*, E.D. Mich. No. 03-71056 (Plaintiffs' Ex. E), the court held that an individual defendant, who admittedly was in charge of the daily operations of a company delinquent in its fringe benefit contributions to ERISA trust funds, was personally liable for breach of his fiduciary duties to the funds as a result of his conscious decision to keep his business operating while unpaid fund contributions remained owing. The *McGuire* court noted:

> Defendant [Dan] McGuire has admitted to running the day-to-day operations of Defendant McGuire Steel, including being responsible for decisions to pay contributions. In addition he has not challenged Plaintiffs' assertion that Defendant McGuire Steel continued to operate despite monthly shortfalls in benefit contributions, which leads to the inescapable conclusion that the company was being financed with plan assets.

*Id.* at p. 20.

In this case, Mr. Hughes is the sole owner and officer of Controlled Water. Mr. Hughes and his bookkeeper, Ms. Davenport, have both testified that Mr. Hughes is the person responsible for calling in the corporations' hours each week for purposes of paying fringe benefit contributions. *See* Plaintiffs' Ex. H, pp. 5-6; Ex. I, p. 5. Mr. Hughes hires and fires the employees and determines the jobs performed by Controlled

12

Water. Ex. I, p. 5. Furthermore, there is no dispute that Mr. Hughes is the individual who decided to use two separate corporations -- Controlled Water and D&M -- to attempt to avoid paying fringe benefit contributions on behalf of non-union workers, notwithstanding that the work performed by these workers is covered by the collective bargaining agreement. When Mr. Hughes withheld payment of such contributions through the bifurcation of workers using these two separate companies, he controlled the assets of the Plaintiff Funds. As such, he is personally liable under ERISA Sections 1104 and 1109 for the unpaid contributions found by the auditor to be due and owing in this action.

For all of the foregoing reasons, Defendant Hughes is, along with Controlled Water and its alter ego, D & M Mechanical, liable for the $177,807.24 determined by the auditor to be due and owing to the Plaintiff Funds.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Defendants are liable for the $177,807.24 in unpaid fringe benefit contributions owing under the audit, plus interest or liquidated damages, and reasonable attorneys' fees and costs, as provided in 29 U.S.C. § 1132(g)(2).

IT IS FURTHER ORDERED that Plaintiffs shall submit a verified and itemized affidavit for such amounts of interest/liquidated damages and attorneys' fees and costs to

be awarded pursuant to 29 U.S.C. § 1132(g)(2) within 14 days of the date of this Order.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction in this matter pending compliance with the Court's Orders.

                         s/Gerald E. Rosen
                         Gerald E. Rosen
                         United States District Judge

Dated:  September 19, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 19, 2006, by electronic and/or ordinary mail.

                         s/LaShawn R. Saulsberry
                         Case Manager